The appellant in this case, Andre Dwight Turner, was convicted of two counts of murder made capital because the murders were committed during the course of burglary. The trial court, following the jury's recommendation, sentenced the appellant to life imprisonment without parole. He raises four issues for review by this court. However, because one of those issues requires a reversal, we will address only that issue.
The appellant contends that the trial court erred to reversal in allowing, over his strenuous objection, the State's evidence of deoxyribonucleic acid ("DNA") *Page 353 
population frequency statistics.[1] The appellant preserved this issue for review. The appellant claims that the court erred in not properly following the mandates prescribed by the Alabama Supreme Court in Ex parte Perry, 586 So.2d 242 (Ala. 1991), for the admission of any DNA evidence. The Perry decision established a three-pronged test that the proponent of the DNA evidence (here, the State) must meet in order for the DNA evidence to be admissible at trial. 586 So.2d at 253. Perry further mandated that two types of DNA evidence must be proffered at trial, "matching" evidence and population frequency statistics evidence.[2] In order to be admissible, both types of DNA evidence must satisfy the three-pronged Perry test. 586 So.2d at 253. The appellant argues that the State, in offering the population frequency statistics that were admitted at trial, failed to meet the third prong of the Perry test.[3] That prong, concerning the admissibility of the statistics, states:
 Prong III. Performance and interpretation of accepted techniques . "In this particular case, did the testing laboratory perform generally accepted scientific techniques without error in the performance or interpretation of the tests?"
586 So.2d at 250.
In fact, the State's expert, forensic serologist Elaine Scott, offered no testimony at trial which answered that question affirmatively. During Ms. Scott's testimony, she offered, over objection, figures representing the statistical probability of the DNA pattern she had observed occurring more than once in the population database from which she had calculated those percentages. (R. 448-49.) She stated:
 "Utilizing the Alabama database, which is a database we've built in our laboratories of people from the State of Alabama or that are currently in the State of Alabama, the odds of finding that particular DNA profile [the appellant's] is one in 42,410,000 in the black population and one in 179,700,000 in the white population."
(R. 448-49.) Ms. Scott never stated and the State failed to elicit testimony that Ms. Scott, in arriving at the population frequency statistics, had performed generally accepted techniques without error either in the testing or in the interpretation of those results. Therefore, prong three of the Perry test was not met. *Page 354 
In addition, Ms. Scott did not support her testimony with any explanation of the foundation upon which she bases her opinion. Although §§ 36-18-20(d) and (e), Ala. Code 1975, codify the first two prongs of the Perry test, that statute simply attests to the reliability of those theories. This codification does not absolve the party offering the DNA evidence of the responsibility of explaining in detail those theories and procedures which the legislature has accepted as reliable.
Ms. Scott's population statistics testimony was limited and conclusory. First, Ms. Scott failed to explain adequately the database from which she made the population frequency statistics calculations. Ms. Scott referred to an "Alabama database" and described it as consisting of "people who are from the State of Alabama, or that are currently in the State of Alabama." (R. 448.) This description does not adequately describe the population database. Further, Ms. Scott failed to properly explain her methods for calculating the results. In her testimony, Ms. Scott refers to an "equilibrium" which was set up, but fails to further expound on this equilibrium or its relevance in the probability equation. (R. 431.) Ms. Scott offered no testimony to satisfy the third prong of the Perry test, which specifically requires that foundation. Her answers were vague or nonexistent as to the factors describing how exactly she arrived at the figure of one in 42,410,000 in the black community as the frequency of occurrence of this DNA pattern. Ms. Scott's testimony failed to establish the necessary foundation for admitting the DNA population frequency statistics.
Although the State did lay a foundation for the admission of the DNA matching evidence, that foundation does not cover population frequency statistics. The Perry court explained the difference in the two types of evidence, stating that "a limitation on the use of population frequency statistics is necessary because of the danger that such evidence will have a `potentially exaggerated impact on the trier of fact.'" 586 So.2d at 254 (quoting State v. Schwartz, 447 N.W.2d 422 (Minn. 1989)). Because the statistical probability data is so overwhelming, the danger lies in the fact that statistical probability testimony "unduly encourages the trier of fact in its determination of whether the State had proven guilt beyond a reasonable doubt to focus solely upon a numerical conclusion and to disregard the weight of other evidence." 586 So.2d at 254.
We reverse this judgment on the authority of the Alabama Supreme Court's recent decision in Ex parte Hutcherson,677 So.2d 1205 (Ala. 1996), wherein that court held that the trial court's admission of DNA evidence without the proper testimony regarding the reliability of the test results was reversible error. TheHutcherson court held:
 "The prejudicial impact of both DNA `matching evidence' and DNA population frequency statistics creates such a possibility for prejudicial impact upon the jury that the admission of DNA evidence without complying with Perry can never be harmless error. Perry sets out the predicate for properly admitting DNA evidence, and it must be followed in order to ensure the reliability and trustworthiness of the evidence. The prejudicial impact of scientific testimony, such as that relating to DNA, can unduly influence a jury; it must have a proper foundation before it is presented."
677 So.2d at 1209. (Emphasis added.)
We fail to find sufficient evidence in the record on appeal which satisfies the predicate articulated in Perry and emphasized in Hutcherson.
For the foregoing reasons, the judgment of the trial court is reversed.
REVERSED AND REMANDED.
All the Judges concur.
[1] DNA is the genetic "building block" found in the nucleus of most of the cells in the body. The elements which comprise one DNA molecule are arranged in varying sequences. It is the variance in arrangement of those sequences which makes one person's DNA unique from other persons' DNA. That varied arrangement of sequences can also be used to identify and distinguish one person's DNA from another's.
[2] Matching evidence is evidence which indicates that the DNA sample collected from the crime scene and the DNA sample collected from the accused are alike. Population frequency statistics evidence calculates the statistical frequency with which this similarity between samples occurs within a population.
[3] The Alabama legislature enacted the Alabama DNA Database System, which became effective on May 6, 1994. That act is codified at §§ 36-18-20 through -39, Ala. Code 1975. In enacting this legislation, the legislature has essentially codified the first two prongs of the Perry test. The legislature, following the United States Supreme Court's holding in Daubert v. MerrellDow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786,125 L.Ed.2d 469 (1993), has found that "genetic identification established through DNA testing analysis should be admissible as a matter of evidence in all coons of this state." § 36-18-20(f), Ala. Code 1975. The legislature further found and declared that "genetic identification technology through DNA testing is generally accepted by the relevant scientific community." Further; "the procedures and techniques employing the underlying theory of DNA identification [are] capable of producing reliable results and are generally accepted in the relevant scientific community." § 36-18-20(d) and (e), Ala. Code 1975. *Page 355